First case on the call the docket for a May term is agenda number one case number one one two two zero four and re S.B. Minor versus S.B. Appley this is Tuesday May fifteenth two thousand twelve council for the appellate please proceed. Thank you your honor and may it please the court council my name is Leah Bendick from the Illinois attorney general's office on behalf of the people of the state of Illinois. This court should reverse the appellate court split opinion reversing the trial court's order that directed S.B. A minor to register as a sex offender pursuant to section two A one D of the sex offender registration act or S.O.R.A. S.B. Had been found unfit to go through a juvenile adjudication proceedings and he was never rendered fit after fifteen months of fitness treatment. He was found not not guilty of aggravated criminal sexual abuse of a four year old victim M.J. At a discharge hearing but the court found he was not eligible for civil commitment therefore his case effectively ended there except that the trial court then did order him to register as a sex offender. As a threshold matter I'd like to take a step back and first request that this court find expressly that the code of procedure provisions that address fitness and discharge hearings should apply in juvenile cases. And that is pursuant to section five dash one oh one three of the juvenile court act which provides that adult criminal procedural protections apply in juvenile cases except for situations in which provisions provide enhanced protections. Here these fitness procedures are the type of criminal procedural protections that were meant to be incorporated through this provision. As can be seen especially through the speedy trial provision of the juvenile court act which enlisting several events that told the speedy trial term list three that involve fitness proceedings and in fact cite the code of criminal procedure. So if there are no further questions though on that threshold matter I would like to focus my time on the statutory construction question regarding S.O.R.A. And the question here is whether an unfit not not guilty juvenile should register under the sex offender registration act which calls into question essentially two provisions of that act. Section two A one D which I'll refer to as the unfit not not guilty provision requires quote any person who is charged with a qualifying sex offense and is found not not guilty at a discharge hearing to register. The second provision at issue is section two A five which I'll refer to as the adjudicated delinquent juvenile provision which requires juveniles adjudicated delinquent of a qualifying sex offense to register. The appellate court majority here and S.B. point to that latter provision as essentially limiting the situations in which juveniles to register to that provision. However as the appellate court dissenting justice in the trial court judge noted all three conditions present in the unfit not not guilty provision are satisfied by S.B. or a minor in his circumstance because a juvenile should be considered any person and he was charged with a qualifying sex offense and found not not guilty at a discharge hearing. And notably there is no express limiting language that would support the appellate court majority's position. It would be very easy for the legislature to have said something like juveniles must register only if adjudicated delinquent of a qualifying sex offense. The legislature did not do so. Similarly it would be easy for the legislature to have modified the phrase for the other provisions in section two instead of saying any person it could say any adult person if meant not to apply to juveniles but it does not do so. Senator could that unfit juvenile found not not guilty apply for early termination? It appears no because section three dash five does specifically talk about adjudicated delinquent juveniles. And it is true that the appellate court points to that in support of its interpretation. However there are reasonable reasons that the legislature could have made this distinction. For example, there is the analogy to adult criminal proceedings where an adult who is convicted and sentenced to a term of imprisonment, that adult can earn potentially good conduct credits and seek early termination of his sentence. Whereas an adult who is civilly committed after a discharge hearing has no comparable mechanism. So it's reasonable that the legislature could have extended that analogy and determined that a juvenile who is adjudicated delinquent in some instances should not apply for early termination of his sentence. And in some instances should be able to try to show a potential for early termination whereas a juvenile who is unfit may not have that opportunity. And really the rationale that would be behind that analogy is that the two characteristics of that latter group being unfit but also having been found not not guilty at a discharge hearing beyond a reasonable doubt, the legislature could reasonably view that group as more likely to not understand the culpability of their actions. And so that it is important for them to serve their entire or to register for their entire term. After all, juveniles in SB situation, for example, simply their cases end if they're never rendered fit and they are not civilly committed, that is the end of their case and they're not otherwise on the radar of law enforcement. And in fact that is the purpose of SORA, to make sure that law enforcement officials are aware of certain sex offenders to help them address cases of sexual abuse and other sex offenses. So certainly this group, because they're not otherwise on the radar of law enforcement, perhaps it's more important that they have to register for their entire term. Ms. Bendick, is there any justification for treating an unfit juvenile like SB the same as an adult? Do you mean in the context of the dissemination of information or just more generally? More generally. Well, perhaps because, well, it's hard to think of a reason for that specifically. But to the extent that it only comes up in two contexts here, it only translates to two situations. The early termination provision that I just discussed and the dissemination of information under the community notification law. And it is true there that adult information is disseminated more broadly than juvenile situations. But looking at that provision, there are seven instances that the term juvenile sex offender is used and only one time that adjudicated delinquent is used. So it's much more likely that in that instance there was a legislative oversight that could be quickly or easily corrected so that perhaps the legislature did not intend for unfit juveniles to be treated as adults in the context of dissemination of information. But since the only other instance where these unfit juveniles are treated as adults, which is the context of your question, is in this petition for early termination. As I just explained, there are reasonable reasons for the unfit juvenile to have to register for their entire term that are not applicable to the adjudicated delinquent juvenile. So since there's really only these two instances, there is a reason for one. And it seems perhaps that the other one is just an oversight because there's only one use of that term adjudicated delinquent juvenile and that's found in section 121 of the community notification law. Now SB raises two potential constitutional challenges to the state's interpretation, but neither of them are successful. Some of these same arguments that I just made regarding section 3-5 are relevant to the equal protection analysis. There are actually two steps to an equal protection analysis, as this court is aware. The threshold question is whether the two groups being compared are similarly situated. And the two groups here are adjudicated delinquent juveniles and unfit, not not guilty juveniles. In the case of Kanetsky, this court was considering whether it's constitutional for juveniles to register under the Sex Offender Registration Act. And in the face of an equal protection challenge, this court found not similarly situated adults. And juveniles by looking at the differences in the consequences of their status. And doing that same analysis here, these two groups should not be similarly situated because, as already explained, juveniles like SB who are found unfit and not not guilty, if not civilly committed, essentially face no consequences for their conduct, even though they have been shown not not guilty beyond a reasonable doubt at a discharge hearing. Which is in sharp contrast to an adjudicated delinquent juvenile who faces concrete consequences such as a juvenile detention possibly or probation with several conditions attached. And given this distinction in the consequences, given their status, they are not similarly situated. But even if this court disagrees with that, the next step in the equal protection challenge is to apply scrutiny to the difference that the legislature has made for these two groups. And SB does not disagree that rational basis scrutiny applies here, the lowest level of scrutiny, because of the fact that there's no suspect class or fundamental right involved. And applying the rational basis, for reasons already discussed, there is a reasonable justification for the way that the legislature has treated these two groups differently. Because, again, extending that analogy of adults who can earn good conduct credits, whereas civilly committed adults cannot, that same rationale is easy to apply. And it's easily relatable to this present situation, looking at an adjudicated juvenile delinquent versus an unfit not not guilty juvenile. Accordingly, there is a reasonable basis for this, and the equal protection challenge fails. The second constitutional challenge that SB raises is a procedural due process challenge. This is a two-part inquiry, where the first question is whether there is a due process right implicated by the regulation in front of SB. And the second question is whether an adequate level of procedural protection has been provided to justify any infringement on that right. Now, SB has not provided any argument, much less shown, that there is a due process right implicated here. Presumably, if any, it would potentially be a liberty interest. Notably, in the Kanetsky case, this court went past that first question, and essentially left open whether there even is a liberty interest implicated by having to register under SB. This is noteworthy to SORA, but it is notable that appellate courts that have directly addressed the issue have found that there is no liberty interest involved. But even assuming there is a liberty interest involved, the challenge also fails at the second step. Now, Kanetsky upheld the level of procedural protections provided to juveniles who are required to register when compared to adults, in light of the fact that there is only one procedural protection absent in juvenile proceedings compared to adults, that being that juveniles do not have the right to a jury trial. Now, in our case, in context, the only difference between a juvenile proceeding and a discharge hearing in terms of procedural rights is that there is, under the statute, certain secondary hearsay is admissible, so there is a lesser confrontation right in discharge hearings. But this one difference should not change the conclusion that this court reached in Kanetsky, that there are adequate procedural protections. In light of this court's decision in People v. Wade, which upheld the constitutionality of the discharge hearing provision in light of an adult who faced civil commitment, because surely civil commitment is a greater infringement on the liberty interest than any implicated by registration under SORA. So if discharge hearings provide adequate procedures in the face of civil commitment, that leads to the inescapable conclusion that it's adequate procedures to justify SORA registration. So accordingly, the due process challenge fails as well. So getting back to the heart of the case, looking at the plain language of the provision, it is undisputed that SB satisfies the three conditions of the unfit not not guilty provision by being a person who is charged pursuant to Illinois law with a qualifying sex offense, who is found not not guilty at a discharge hearing, and given the absence of the easily added limiting language in the provision that would support the appellate court's decision, and the court's contrary interpretation, this court, if there are no further questions, should reverse the appellate court. Thank you. Carrie Stevens Good morning, Your Honors, Counsel. May it please the Court, I'm Carrie Stevens, and I represent the minor, SB, in this case. Here are the crux, like the State agrees, the crux of it is statutory interpretation. How we should read the definition of a sex offender, how the definition of a juvenile sex offender applies to it, and how SB, in his case, actually fits into or doesn't fit into this section. SORA defines juveniles in two, or addresses juveniles in two places. One is in Section 3-5, which specifically refers to how SORA applies to adjudicated juveniles. And in that section, it clearly specifies adjudicated juveniles. It doesn't mention any other way that a juvenile can actually get into SORA. So adjudicated juveniles are mentioned there specifically. Then in Section 2, where it's defining a sex offender in general, Section 2 is incorporated by Section 3-5, defining a juvenile who is a sex offender. Section 2 then lists ways for any person to be a sex offender. Under any person, one thing that's listed in Section 5 of that is a person who is adjudicated a juvenile. We all agree that he doesn't fall in that part. So the only other portion of the statute that SB can fall into is under Section 1, subsection 1, which does say any person, which he's the person, but charged with a statute under Illinois law, here he wasn't charged with anything. Charges refer to adult proceedings, they refer to a charge as a complaint, an information, an indictment. A juvenile petition is not encompassed in that definition of a charge. So he automatically falls out of the statute because he wasn't charged with a sex offense. But dropping down, the second qualification in Subsection 1 that you can find under D is that the person be found anything but acquitted in a discharge hearing under 104-25. So in essence, that would be something like this, where someone is found not not guilty, but again, it doesn't apply to a juvenile. There, subsection D refers to a 104-25 discharge hearing. Here, what looked like a discharge hearing was held, but it couldn't possibly have been under 104-25 because there's no provision for that. There's no provision for SB to even come into this, there's no provision for the discharge hearings to be applied to him. In juvenile proceedings, we have a lot of different areas of law where juveniles want the discharge hearing to be held. They want the rights that are given to adults, but the courts have held routinely that they can't, that particular rights, such as jury trial admonishments, post-trial adjudication motions, certain procedural things do not and cannot apply to juveniles because those statutes providing those rights to adults mention criminal proceedings, mention the word defendant, mention conviction. There is the provision that incorporates those procedural aspects of the criminal code that are to benefit juveniles. The argument's been made that when someone is found unfit, there's no ending to it, there's no answer to it, unless there's a discharge hearing. So if you're suggesting that there would be no discharge hearing, what did you envision with a discharge hearing? A juvenile, my responder, who's been found unfit, that stays with him forever? Yeah. I think, starting back at the provision that brings in procedures for adults that would protect a minor, that, you know, obviously is true. Some fitness aspects are present in it, because a juvenile, we do not want to have him go through this being unfit. We want to ensure fitness, we want to ensure that he can consult with counsel, assist counsel, know what's going on in his case. But, so therefore we do have the general need for fitness. However, if you put him into this definition, if his situation goes into this, then you're taking out statutory or procedural protections, such as this section, then he's losing procedural rights. So it doesn't quite fit into the general, we apply procedural rights to juveniles, except when. What if he's someone who's innocent, let's say? Isn't that the whole purpose of the discharge hearing? Saying here's someone with a mental condition, and yet perhaps they should not be involved in the court system at all. We need to determine that early, that there, are they not guilty? Not guilty? Do that early, and then we can deal with the mental health issues. Here you'd have a juvenile sort of caught in limbo, and perhaps may be innocent of any charges. And I think, and he was acquitted of one of the charges. I think that the point is that with a 10425 discharge hearing, that specifically puts you into the sex offender definition, section two. But juveniles, since there's no way to put them into that, unless the legislature rewrites something, they can still have those protections. They don't have to have a 10425 hearing. Like in context of a guilty plea, we want our adults to be admonished of X, Y, and Z in Rule 402, but we haven't applied that to juveniles. But juveniles still have those constitutional protections, just in other ways. And I think that here, this is a good example of why, or how a juvenile can have those protections. Here, all the parties in the case, they went ahead and they did what they were familiar with in an adult proceeding. They did what's like a discharge hearing. But it just couldn't have been, because it doesn't fall under that statute. And if it doesn't fall under that statute, then it's not pulled into section two of SORA. And the whole reason that this becomes a real issue is because under SORA, if he's not, if he doesn't fall under section five, section five of an adjudicated juvenile, then he cannot petition the court for early termination. And that's one of the significant rights that distinguishes juveniles from adults. This court said in Konecki that that was one of the primary. I'm just going to dismiss Ms. Bendick's argument that perhaps the reason for that is that a juvenile who is found unfit doesn't realize their own culpability. As far as so. Right, as far as so that's why they can't petition. Right, that that was the rationale behind them not being able to petition. Well, first of all, we don't know what the rationale was. We're just kind of, you know, when we look at a statute, we look at the words of it, the plain language, we don't pull in assumptions for it. But saying that, you know, the legislature did intend that still doesn't make sense, because those general provisions, like Justice Tice was talking about, they apply criminal proceedings to juveniles, except if there's a rule or a law specifically pulling them out and giving them more protection. And early termination, unfit juvenile, fit juvenile, a juvenile is dealt with in a particular way in that they should be allowed early termination. That's what the statute says. That's why this court said it's okay for them to register as sex offenders. That's a huge issue, and it's more because they're a juvenile versus an adult than fit versus not fit. A juvenile, you know, in this case, he could, Seth could petition the court after five years. This summer coming up is his five years, but he can't petition the court for it. And it's a little bit different, fit or unfit, it's still different than an adult, because five years for a juvenile is significant. You know, their life changes a lot, and I would say a lot more than five years for an adult. Here he was finishing up school during that time of his life, he ended up getting a job and working, he's getting married. You know, his life has really changed, and from the markers in his life, it looks like he's progressed. So since he's a juvenile, we want to give him the right to go before the court and say, this is how I've changed. These are some new evaluations on me. This is what I've done. You know, and present evidence. If he's still found unfit, don't grant him the early termination. Just deny it. It's just, it's not an automatic right to the termination, it's the right to petition. And I think that that's very specific to all juveniles. So I think that that's the crux of what we're looking at. And we want to follow the statute the way it goes. We want plain language, we'll look at the intent. We don't want to read stuff into it, we don't want to make assumptions. The state's making, trying to kind of write it in two places. They're trying to pull non-adjudicated juveniles into the statute where they do not, they just aren't pulled in by the language. We have to make that leap to put them in there. We have to say, well, it's like an adjudicated juvenile, so he can come in. Or it's like a not-fit adult, so he can come in. But he's not either one of those. So to do it, we're rewriting the statute and making assumptions that we shouldn't make when following the rules of statutory construction. Then, of course, the second way that we would have to alter it on our own and make assumptions is with the early termination. I mean, there's no doubt that there's no way that he can't apply, that he is prohibited from petitioning for early termination. But if, you know, if we follow the state's side, thinking, well, sure, there's this flaw in here, but we can assume that it was a legislative oversight. And the appellate court relied on this aspect of that right being denied to find this probably doesn't apply to juveniles who aren't eligible for early termination. And who aren't adjudicated. The dissent in the appellate court even admits that this is kind of, you know, this, you know, he says that he would question the thought process of the legislature, and that's true. So if we make SORA Section 2 apply to juveniles but allow them this important right, then we're not going by the statute, the full term, the full meaning of the statute. And I would just say with the states also argued that juvenile proceedings or adult fitness proceedings apply to juvenile cases as seen in the juvenile speed trial statute. And, you know, I don't argue with that, but in the speedy trial statute, they're addressing specific provisions of the code to be brought in. And then a more general thought of fitness hearing, fitness determination, which should be done in here. It just shouldn't fall in this, or it can't fall in this particular section right now. And that would be an issue for legislators to take up. So, excuse me, and then as far as, you know, the argument that good time credits apply. And so, you know, there's a certain protection there. Good time credits and just general mental health commitment are just different situations. They're different ways of getting there. They're different treatment plans. One's punitive, one's more treatment. And when you're on the track of a mental health issue, then you have periodic reviews and so forth. It's very different from the criminal good time portion. So if there are no further questions, I would just ask this court to affirm the appellate court and find that the registration in this case doesn't apply to not guilty juveniles. Thank you. Thank you. I have four points in rebuttal. First, addressing my opponent's argument that it would be a stretch to look at Section 2A1D, the unfit, not not guilty provision, and to insert juveniles into that situation. I would point to this court's decision in In Re, J.W. from 2003. Because in that case, this court was looking, although at a prior version of SORA, at, again, at Section 2 of SORA, although at subsection 2A. Section 3, or excuse me, E, to determine whether the term sexual predator should be applied to juveniles. And in that case, even though nowhere within the provisions defining sexual predator was there a reference to juveniles per se, this court still looked at the phrase any person and said that juveniles fall within that. Even though elsewhere in Section 2, at that time, in Section 2A-5, there was a definition for the term juvenile sex offender, although that provision no longer remains. But the fact that juveniles were addressed elsewhere, but the term sexual predator did not mention the term juvenile, this court nonetheless held that juveniles could qualify as sexual predators. Now that analysis can completely apply in this situation, because even though the unfit, not not guilty provision does not use the word juvenile, juveniles fall within the term any person. And the fact that a later subsection, subsection A-5, addressing adjudicated delinquent juveniles addresses juveniles. And the fact that the term itself, absent express limiting language, does not exclude the fact that the term any person does include juveniles. The second point I'd like to make concerns that that Juvenile Court Act provision, Section 5-1013, and whether fitness, adult fitness procedures from the Code of Criminal Procedure do apply in juvenile cases. Now, SB seems to be citing that Section 3-5 that allows for petitions for early termination is the sort of enhanced protection that juvenile court that somehow blocks discharge hearings from applying in juvenile cases. It should be noted that Section 3-5 is not about fitness procedures. It is not about discharge hearings. In other words, because the Juvenile Court Act is completely silent about any sort of fitness procedures or discharge hearings, there is no provision that provides enhanced protections regarding how fitness should be addressed or how discharge hearings should be conducted. So Section 3-5 is irrelevant to that specific question. So instead, as Justice Tice pointed out, if only the fitness evaluation and the fitness hearing were to apply, but not the discharge proceeding, that would be taking sort of step four in a four-step process of fitness evaluations out of the mix without inserting anything into their place and would, in effect, leave juveniles in limbo. I suppose that would mean, under SB's interpretation, that SB would have had to continue to undergo fitness treatment indefinitely until somehow he was eventually rendered fit, or, I mean, it seems like there would be no end point. And that shows why it would make no sense to only apply some of adult fitness procedures to juvenile proceedings, because as SB acknowledged right here, what the court did was what is familiar, what is specified in the Code of Criminal Procedure. And because there is no enhanced protection-type discharge provision in the Juvenile Court Act, that is the situation under Section 5-101-3 because of the silence where the adult provision should apply. Ms. Bendick, I have a problem just trying to understand this. If an adult is required to register and remain on the sex-offensive offender list for the remainder of his or her life, and if required to register an unfit juvenile like SB, would it unconditionally remain on a registered sex offender rest of his or her life, too? And those juveniles who are adjudicated delinquent have the right to petition for termination. I just think this is unfair. Well, actually, Your Honor, SB would be subject to a 10-year period rather than a lifetime provision. And it's true that this court already held in J.W. that an adjudicated delinquent juvenile can potentially be ordered to have a natural life registration. In that case, it was a sexual predator who is required to register for natural life. But looking at the sexual predator definition, because it does use the term convicted, it would seem that unfit, not not guilty juveniles could never be subject to a lifetime term. So it's actually true that adjudicated delinquents, although potentially in some individual cases they might be able to seek early termination, those adjudicated delinquents also are potentially subject to lifetime terms, whereas the unfit juveniles will always be in the 10-year category. So actually they're sort of a middle ground. And that reflects actually the applicability of that analogy to the adult situation, that it makes sense that in the case of an adjudicated delinquent juvenile or a convicted adult that it's appropriate to case by case that sometimes maybe they can show factors in one case why they should get early termination. But it's also true that in the most serious offenses sometimes they don't get good conduct credits or sometimes they have a natural life term. None of that is true in the unfit situation. There it seems the legislature wanted to set a floor that given unfitness that there was a greater likelihood that they would not understand the culpability of their conduct, so that the minimum should be the 10-year term, but also provided that the would never be subject to the lifetime term. So that shows that it's not that the one group was treated more seriously than the other, but it was just that they were treated differently because of the mental health aspect of the latter group. And that I've, yes. Male Speaker 2 Mr. Stevens though argued with respect to that point that the legislature could have had them apply as well for early termination and if there's a finding of unfitness just not grant the termination. I know we're somewhat speculating as to what went through their minds at the time of formulating the statutes. Female Speaker 1 Sure. And I would say as an alternative to the argument I've already provided on this point of Section 3-5 about early termination, that if there is a problem, if this court finds either an absurdity or a constitutional problem with that discrepancy, that problem is in Section 3-5. It's not in Section 2. So in other words, that should not mean that unfit juveniles do not have to petition for early termination. In this instance, that should mean that Section 3-5 should be adjusted to allow unfit juveniles to petition for early termination. Whether this court, you know, suggests to the legislature that that would be an appropriate adjustment, if not, because after all, if it does not rise to the level of a constitutional problem, that is a legislative question that is left to the legislature. And because there is a reason that the legislature could have made that discrepancy, if it's not a constitutional problem, it should be left as is. And that leads me actually to my final point that I'd like to make on rebuttal, and that underlying the statutory construction questions is the question of policy. And this court has affirmed that the policy behind SORA is to try to reduce and protect instances of child abuse and sex offense against children by ensuring that sex offenders register. Now that policy is equally applicable to unfit, not not guilty juveniles. After all, the harder policy questions have already been made and already been affirmed. We already know that adjudicated delinquent juveniles shall register. We already know that unfit, not not guilty adults shall register. So there is no policy reason to take the group of unfit, not not guilty juveniles and have them not register. So again, given that term, any person that is broad and the plain language, which includes juveniles, this court should affirm that SB should have to address the issue of child abuse and sex offender determination. That is where the problem should be addressed. Not by having the unfit, not not guilty juveniles, not by excusing them from registering in the first instance. And so if there are no further questions, again, I'd like to ask this court to reverse the appellate court. Thank you. Thank you. Case number 112-204, 204 NRA SB, a minor people, the State of Illinois v. SB, is taken under advisement as Agenda 1.